UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

BERNARD MURFF, JR.,

        Defendant.

_____ /

No. 1:21-CR-28

Hon. Hala Y. Jarbou

## GOVERNMENT'S MEMORANDUM OF LAW REGARDING DEFENDANT'S OBJECTIONS TO FINAL PRESENTENCE REPORT

The United States of America by and through its attorneys Andrew Byerly Birge, United States Attorney for the Western District of Michigan, and B. René Shekmer, Assistant United States Attorney, in response to Defendant Bernard Murff, Jr.'s objections to the Final Presentence Report, states as follows:

Bernard Murff was charged with two counts of distribution of fentanyl, one count of possession of a firearm by a convicted felon, and forfeiture of the firearm. (R.1, Indictment, PageID.1-4.) On March 9, 2021, Murff entered pleas of guilty to all counts and admitted to forfeiture of the firearm. (R.26, PSR at ¶ 5, PageID.107.)

A Presentence Report was prepared which found the USSG § 2D1.1 base offense level to be level 26 based on the following converted drug weight (CDW) computation:

June 18, 2020    Fentanyl    1.772 grams    4.43 kg CDW

| | | | |
|---|---|---|---|
| June 18, 2020 | Crystal Methamphetamine | 1.0 ounce | 567.00 kg CDW |
| July 1, 2020 | Fentanyl | 1.79 grams | 4.47 kg CDW |
| July 1, 2020 | Methamphetamine | 7.0 grams | 14.00 kg CDW |
| Total: | | | 589.90 kg CDW |

(R.26: PSR at ¶ 28, PageID.111.)

Two levels were added for possession of a dangerous weapon pursuant to USSG § 2D1.1(b)(1). (R.26: PSR at ¶ 29, PageID.111.) And two points were added for use of violence or credible threats of violence pursuant to USSG § 2D1.1(b)(2). (R.26: PSR at ¶ 30, PageID.111.) The resulting total adjusted offense level is level 30. (R.26: PSR at ¶ 34, PageID.112.)

Three levels were deducted for timely acceptance of responsibility pursuant to USSG § 3E1.1. (R.26: PSR at ¶ 36-37, PageID.112.) Thus, the total offense level was determined to be level 27. (R.26: PSR at ¶ 38, PageID.112.) Total offense level 27 at criminal history category III, results in guideline sentencing range of 87 to 108 months in prison. (R.26: PSR at ¶ 88, PageID.125.)

Murff has three outstanding objections to the final Presentence Report. First, Murff objects to the inclusion of one ounce of crystal methamphetamine as June 18, 2020 relevant conduct in the drug quantity calculation. Second, Murff objects to the inclusion of seven grams of methamphetamine sold on July 1, 2020, because laboratory analysis shows the substance to be a cutting agent, not methamphetamine. Third and finally, Murff objects to the two-level enhancement for use of violence or credible threat

of violence. Murff does not object to the underlying facts; his objection in each case is a legal objection. The Government will address each outstanding objection separately.

1. June 18, 2020 Crystal Methamphetamine (PSR ¶ 16, 28).

The undisputed facts which form the basis for the inclusion of the one ounce of crystal methamphetamine are set forth in the Presentence report as follows:

> 8. On June 18, 2020, an undercover law enforcement officer (UC) conducted a controlled buy of 2.0 grams of heroin from Mr. Murff in exchange for $240.00. The UC arranged through a third party to meet the defendant at a convenience store. The UC and the third party arrived at the store, and Mr. Murff exited his vehicle and entered the undercover vehicle. He provided a folded piece of paper containing suspected heroin to the third party, who opened it to show the UC. The UC then weighed the substance in Mr. Murff's presence.
>
> 9. Mr. Murff also provided his telephone number to the UC for future communication. **The UC asked Mr. Murff when he expected to have crystal methamphetamine again, as he was told by the third party that Mr. Murff was out. Mr. Murff said he had it now, but would not sell it smaller than 1.0 ounce at a time. He told the UC he would sell him crystal methamphetamine for $1,000.00 per 1.0 ounce. The UC stated he would contact Mr. Murff at a later date to purchase crystal methamphetamine.** Mr. Murff exited the vehicle. The substance purchased on this date was later laboratory tested and confirmed to be 1.772 grams of fentanyl. **[Mr. Murff will also be held responsible for 1.0 ounce of crystal methamphetamine, based on his own statements.]**

(R.26: PSR at ¶ 8-9, PageID.107-108)(Emphasis added).

Murff argues that the one ounce of crystal methamphetamine should not be included in the drug computation because "Mr. Murff and the undercover officer did not agree and negotiate the sale of this amount," and "there is no evidence that Mr. Murff

3

was actually capable of delivering this large amount of crystal methamphetamine." (R.24: Def.'s Objections, PageID.76.) There arguments are without merit.

Murff stated that he had crystal methamphetamine on June 18, 2020, that he would not sell it in less than one-ounce quantities, and that the price was $1,000.00 for one ounce. The evidence that Murff was capable of selling a one-ounce quantity of crystal methamphetamine comes directly from Murff's own mouth.

It is true that the undercover officer did not agree to purchase one ounce of methamphetamine from Murff on June 18, 2020. However, Murff stated that he had crystal methamphetamine and offered to sell it for $1,000.00 per ounce, with no less than one ounce per sale. Thus, by Murff's own statements, he was in possession of at least one ounce of crystal methamphetamine which he offered for sale. "Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level. See §1B1.3(a)(2) (Relevant Conduct)." USSG § 2D1.1, App. Note 5. "If the offense involved both a substantive drug offense and an attempt or conspiracy (e.g., sale of five grams of heroin and an attempt to sell an additional ten grams of heroin), the total quantity involved shall be aggregated to determine the scale of the offense." *Id*. "Where there is no drug seizure or the amount seized does not reflect the scale of the offense, the court shall approximate the quantity of the controlled substance." *Id*.

Instead, Murff references the next part of USSG § 2D1.1, App. Note 5:

> In an offense involving an agreement to sell a controlled
> substance, the agreed-upon quantity of the controlled
> substance shall be used to determine the offense level
> unless the sale is completed and the amount delivered more

> accurately reflects the scale of the offense. For example, a
> defendant agrees to sell 500 grams of cocaine, the
> transaction is completed by the delivery of the controlled
> substance--actually 480 grams of cocaine, and no further
> delivery is scheduled. In this example, the amount
> delivered more accurately reflects the scale of the offense.
> In contrast, in a reverse sting, the agreed-upon quantity of
> the controlled substance would more accurately reflect the
> scale of the offense because the amount actually delivered
> is controlled by the government, not by the defendant. If,
> however, the defendant establishes that the defendant did
> not intend to provide or purchase, or was not reasonably
> capable of providing or purchasing, the agreed-upon quantity
> of the controlled substance, the court shall exclude from the
> offense level determination the amount of controlled
> substance that the defendant establishes that the defendant
> did not intend to provide or purchase or was not reasonably
> capable of providing or purchasing.

USSG § 2D1.1, App. Note 5.

In this case, Murff, himself stated that he was in possession of crystal methamphetamine, that he would sell it in minimum quantities of one ounce, and that the price was $1,000.00 per ounce. That is, there was a completed sale of fentanyl by Murff, followed by an attempted sale of crystal methamphetamine, the offer for sale of crystal methamphetamine at $1,000.00 per ounce. This is not a case of an agreed upon transaction where less than the agreed upon amount was actually delivered.

Murff has the burden of providing evidence which contradicts his own prior statements. Murff has provided no information to the Government or to the Probation Officer as to how he would contradict his own words to the undercover officer and now claim that he was not reasonably capable of providing at least one ounce of crystal methamphetamine that he offered to sell to the undercover agent on June 18, 2020. In the event that Murff should attempt to provide such evidence by way of his own

5

testimony at sentencing, this Court should view such testimony skeptically due to the fact that Murff has an incentive to misrepresent the facts in order to lower his base offense level and directly affect his sentencing guideline range. Furthermore, the Government may seek an adjournment of the sentencing, if necessary, to prepare to rebut any such testimony by Murff, the scope and substance of Murff's testimony having not been disclosed to the Government.

2. <u>July 1, 2020 Methamphetamine (PRS ¶ 16, 28).</u>

The undisputed facts which form the basis for the inclusion of the 7 grams of methamphetamine are set forth in the Presentence report as follows:

> 10. **On July 1, 2020, a UC conducted a controlled buy of 2.0 grams of heroin and 7.0 grams of methamphetamine from the defendant. The UC called Mr. Murff directly and was given a price of $500.00 for both substances.** The UC was instructed to meet him at a convenience store. When the UC arrived, Mr. Murff exited a vehicle and got into the front passenger seat of the undercover vehicle. While getting into the vehicle, the UC heard metal strike the door pillar and recognized the sound to be a firearm. Mr. Murff handed the UC a folded paper containing the heroin, which the UC placed inside of a compartment in the dashboard of the vehicle. **Mr. Murff told the UC he was not able to get the 7.0 grams of methamphetamine, as his supplier was delayed.** He explained he would have the substance within one hour. Mr. Murff exited the undercover vehicle, and the UC observed a handgun in Mr. Murff's rear waistband.
>
> 11. **Approximately 10 minutes later, Mr. Murff contacted the UC and stated his supplier would be bringing the methamphetamine to the area shortly. He requested the UC stay in the area until he was able to obtain it and deliver it.** The UC returned to the convenience store to wait for the defendant. Approximately 15 minutes later, Mr. Murff instructed the UC to come to the Family Health Center, but the UC advised law enforcement

were in that area, so they chose a different meeting spot. The UC arrived at the parking lot of a liquor store and observed Mr. Murff arguing with another male subject. Mr. Murff walked away and got into the passenger's seat of the undercover vehicle. The unknown male subject pulled his car in front of the undercover vehicle and placed one of his hands out of view.

12. While still seated in the undercover vehicle, Mr. Murff removed a black handgun from his waistband and pointed it at the other subject. The UC grabbed the handgun, pressed it into Mr. Murff's lap, and told him to calm down. The UC then drove the vehicle away to avoid a shooting incident, as Mr. Murff was very agitated, saying he was going to kill the other subject. **While leaving the parking lot, the UC provided Mr. Murff the cash for the methamphetamine purchase in an effort to occupy the defendant's hands with something other than the firearm. The defendant handed the UC a brown paper bag with what appeared to be low quality methamphetamine. The UC placed the bag onto a digital scale, weighing it in Mr. Murff's presence. Mr. Murff then told the UC to pull the vehicle over and let him out, to which the UC complied.** The heroin was later laboratory tested and determined to be 1.79 grams of fentanyl. **[The 7.0 grams sold as methamphetamine was laboratory tested and determined to be MSM, a cutting agent, not a controlled substance.]**

(R.26: PSR at ¶ 10-12, PageID.108-109)(Emphasis added).

Murff objects to the inclusion of the 7 grams of methamphetamine because the laboratory report shows that the substance sold as methamphetamine was in fact a cutting agent and not methamphetamine. This argument is without merit. The agreement to sell the 7 grams of methamphetamine and the delivery of a substance represented as methamphetamine is sufficient. "We find no authority in the Guidelines, nor in interpreting case law, that says the relevant drug quantity should be limited to the

7

actual amount of genuine drugs sold." *United States v. Franco*, 318 F. App'x 411, 417 (6th Cir. 2009).

3. <u>Use of Violence or Credible Threat to Use Violence (PSR ¶ 30)</u>.

The undisputed facts supporting the two-level enhancement for threat to use violence are set forth above, paragraphs 11 and 12 of the Presentence Report. Additionally, paragraph 17 of the PSR states as follows:

> 17. Murff possessed a firearm on at least two occasions in connection with this offense. [**He also made a credible threat to use violence when he pointed a firearm at another person and verbalized his intent to kill that individual during a controlled buy.**]

(R.26, PSR at ¶ 17, PageID.110.)

USSG §2D1.1(b)(2) states, "If the defendant used violence, made a credible threat to use violence, or directed the use of violence, increase by 2 levels."

Murff objects to the two-level enhancement pursuant to USSG §2D1.1(b)(2) for credible threat to use violence because "nothing in the PSR indicates that this incident was in any way related to the delivery of drugs on July 1" and "[t]hus, this incident is not relevant conduct to the offense of conviction and should not be applied." (R.24: Def.s Obj. to PSR, PageID.78.) This argument is without merit.

USSG §1B1.3(A) defines relevant conduct as, "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."

8

While sitting in the undercover officer's vehicle, for the purpose of doing a drug deal which was eventually completed, Murff pulled a handgun and pointed it at man in another vehicle, saying that he was going to kill that person. The undercover officer diffused the situation by grabbing Murff's handgun and pressing it into Murff's lap and then driving the vehicle away to avoid a shooting incident. However, pulling a handgun, pointing it at someone, and saying you are going to kill that person is a credible threat to use violence. And, in this case, it occurred during a drug deal with an undercover police officer.

Respectfully submitted,

ANDREW BYERLY BIRGE
United States Attorney

Dated: June 16, 2021
/s/ B. René Shekmer
B. RENÉ SHEKMER
Assistant United States Attorney
P.O. Box 208
330 Ionia Avenue, N.W.
Grand Rapids, Michigan 49501-0208
(616) 456-2404